## IN THE MATTER OF THE PETITION OF HENRY A. CRAM TO VACATE AN ASSESSMENT.

The provision of the act of 1840, relating to the collection of assessments and taxes in the city and county of New York (§ 7, chap. 326, Laws of 1840), which limits assessments for local improvements to one-half the value of the property assessed, was not repealed by the provision of the act of 1872, in relation to local improvements in said city (§ 5, chap. 580, Laws of 1872), authorizing assessments for work done under contracts approved by the commissioners appointed by the latter act; and such assessments are subject to and controlled by said limitation.

Accordingly, *held,* that an assessment under said act of 1872, exceeding half the value of the property assessed, was unauthorized and was properly vacated under and in pursuance of the act of 1874, in relation to taxes and assessments in said city (chap. 302, Laws of 1874).

Also, *held,* where a number of lots were assessed together, with no separate valuation upon each, that the assessment could not be reduced to the limits prescribed by the act of 1840, and affirmed to that extent, as there was no sufficient basis for apportioning the tax.

(Argued January 30, 1877; decided May 22, 1877.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, reversing an order of Special Term which vacated and set aside an assessment upon certain lots belonging to the petitioner in the city of New York, for regulating, grading, etc., 135th street in said city.

The facts sufficiently appear in the opinion.

*Henry A. Cram, in pro. per.* The assessment must be vacated because there has never been any preliminary valuation of the lots, and because it exceeds half their value. (Laws 1840, chap. 326, § 7, p. 272.) The burden of proving that these facts are not true, rested upon the city. (*In re Second Ave. M. E. Ch.,* 66 N. Y., 395; *Van Ness* v. *Bk. of U. S.,* 10 Pet., 449; *Sharp* v. *Johnson,* 4 Hill, 92; *Sharp* v. *Speir,* id., 76.) The act of 1840 was not repealed by the act of 1871, chapter 574. (Potter's Dwar., 154, 155, note

2; Foster's Case, 11 Rep., 59; *Williams* v. *Pritchard*, 4 D. & E., 2; *Rex* v. *Pugh*, 1 Doug., 188; *Cumberland, etc.*, v. *Magruder*, 34 Md., 381; *C. & O. Canal* v. *B. & O. R. Co.*, 4 G. & I., 1; *Street* v. *Com.*, 6 W. & S., 209; 10 Barr., 442; *State* v. *Bishop*, 41 Mo., 16; *Case* v. *Harney*, 5 Clark, 1; The Distilled Spirits, 11 Wal., 356; *Coal* v. *Smith*, 1 Black., 459; *People* v. *Palmer*, 52 N. Y., 83; *Costello* v. *Mayor, etc.*, 63 id., 49; *Bowen* v. *Lessee*, 5 Hill, 221; *Lefevre* v. *Lefevre*, 59 N. Y.   ; *Williams* v. *Potter*, 2 Barb., 316; *Wallace* v. *Bassett*, 41 id., 92; *People* v. *Deming*, 1 Hill, 271; *In re Zborowski*, 68 N. Y., 88; *Eaton* v. *Pickersgill*, 55 id., 310.) The appellant was not bound to subdivide his lot to have it assessed. (*In re William and Anthony sts.*, 19 Wend., 678; *In re Anderson*, 57 Barb., 411.)

*D. J. Dean*, for the respondent. All defects in the assessment were cured by the certificate of the contract commissioners appointed under chapter 580, Laws of 1872. (*In re Peugnet*, 5 Hun, 437.) The legislature took away the remedy given by the act of 1858, as against assessments imposed for improvements then completed or in progress, by § 7 of chapter 580, Laws 1872. (*In re Mayer*, 50 N. Y., 504; *Lennon* v. *Mayor, etc.*, 55 id., 361; *Dolan* v. *Mayor, etc.*, 60 id., 474; *Astor* v. *Mayor, etc.*, id., 580.)

ANDREWS, J. The petitioner is the owner of thirty-one lots in block 520 in the 12th ward of the city of New York between 4th and 5th avenues, and 135th and 136th streets, which with three lots on 5th ave. form the southerly half of the block. On the 29th of September 1874 an assessment of $24,041.36 was imposed by the board of assessors on the thirty-one lots of the petitioner for the expense of regulating, grading, etc., 135th street between 4th ave. and 8th ave., which was confirmed Dec. 29, 1874. This proceeding was taken to vacate the assessment, and the principal ground upon which the petitioner relies, and upon which the claim for relief is founded, is that the assessment exceeds one-half of

the assessed value of the land. In 1873 and 1874, block 520 was assessed by the commissioners of taxes and assessments at the sum of $40,000. There was no separate valuation of the lots, and assuming that each half of the block was of the same value, the assessment of $24,041.36, on the lots of the plaintiff, exceeded by several thousand dollars their whole assessed value. The question must therefore be determined, whether the assessors had authority to make an assessment on the plaintiff's lots for the improvement in excess of one-half of the assessed valuation. The question is not free from difficulty. It is not easy to determine what statutes govern the case, and when this is ascertained their meaning is obscure and doubtful. We have, after careful examination, reached the conclusion that the right to assess the plaintiff's lots was limited to an amount not exceeding one-half of their assessed value, and will as briefly as we can, state the reasons for this conclusion.

By the act of 1813 (chap. 86, § 175) the mayor, aldermen and commonalty were empowered to cause sewers, drains and vaults to be made, and to direct the pitching and paving of streets in the city, and to cause estimates of the expense to be made " and a just and equitable assessment thereof among the owners and occupants of all houses and lots intended to be benefited thereby, in proportion as nearly as may be to the advantage which each shall be deemed to acquire." Under this act which is still in force except so far as it has been modified by subsequent legislation the whole expense of local improvements made under its provisions, was assessed upon the property benefited, without reference to the assessed value. The only rule prescribed for the assessment was that it should be just and equitable as between the respective owners of property benefited, but the whole expense was chargeable as a local tax. This statute furnished the rule of assessment for local improvement until the year 1840. The legislature by act chapter 326 of the Laws of that year, entitled "An act in relation to the collection of assessments and taxes in the city

and county of New York, and for other purposes," limited the extent of the assessment to be made for local improvements. This limitation is contained in the seventh section, which is as follows: "Commissioners or assessors for making estimates and assessments for any improvements authorized by law to be assessed upon the owners or occupants of houses and lots, or improved or unimproved lands, shall in no case assess any house lot, improved or unimproved lands, more than one-half the value of such house lot, improved or unimproved lands as valued by the assessors of the ward in which the same shall be situated." This act remained in force until 1857, when an act was passed making the limit of assessment one-third of the assessed value of the lands, instead of one-half such value, as in the act of 1840. (Laws of 1857, chap. 677, § 20.) This was a change of the limit fixed by the act of 1840; but the limitation in the act of 1857 was repealed by section 21, chapter 302 of the Laws of 1859, whereby the limitation in the act of 1840 was restored. (*Wheeler* v. *Roberts*, 7 Cow., 536; *Gale* v. *Mead*, 4 Hill, 109; *Smith* v. *The People*, 47 N. Y., 337; Potter's Dwarris on Stat., 159.)

It is admitted by the counsel for the corporation that the seventh section of the act of 1840 prescribes the general rule of assessment for local improvements in all cases, except where by special statute a different rule is prescribed; and this is undoubtedly the correct view of the subject. (*Matter of Palmer*, 31 How., 42; *In re O'Hare*, 5 Hun, 287; *In re Second Ave. M. E. Church*, 66 N. Y., 395; *In re St. Joseph's Asylum*, *ante*, p. 353). The office of ward assessors was abolished by the law of 1857, and their duties were devolved upon deputy tax commissioners; but the change in the officer appointed to make the assessment did not change the rule of assessment prescribed in the act of 1840. We have, then, the fact that since 1840 it has been the general policy of the assessment laws relating to assessments in the city of New York, to limit the burden which may be imposed upon the real property of

citizens by assessments for local improvements to an amount not exceeding one-half of its assessed value. The regulation of 135th street, for which the assessment in question was made, was commenced in 1864. The common council in that year passed an ordinance for the regulating, grading, etc., of 135th street, between 4th and 8th avenues, and a contract was made with one Kehoe for the performance of the work. Kehoe commenced the work under the contract, but subsequently abandoned it. In 1869 an ordinance was passed for the regulation of 135th street from 8th avenue to the East river. This included the part of the street mentioned in the ordinance of 1864, and embraced in addition the parts between 4th avenue and the East river. On the 30th of April, 1871, the legislature enacted a special law in relation to the improvement of 135th street, being · chapter 227 of the laws of that year. The first section directs the commissioner of public works, immediately to cause 135th street to be regulated, etc., and the second section directs the board of assessors to assess the expenses incurred for the improvement upon the property benefited in the manner provided by law for making assessments for local improvements. The improvement of 135th street was not made under this act. The power conferred upon the commissioner of public works by the act was not exercised. The corporation on the 30th day of August, 1871, through the commissioner of public works, entered into a contract with one Quirck for the regulation, etc., of 135th street from Harlem river to 8th avenue. This contract recites that it was made in conformity with chap. 574 of the laws of 1871, passed April 18, 1871, entitled "an act to amend an act to reorganize the local government of the city of New York, passed April 5, 1871." The fifth section of this act contains this provision: "Hereafter when any contract for public work shall be abandoned by the contractor or declared void by reason of any action of the contractor or default in the execution of any provision of the contract, the commissioner of public works shall have

authority to proceed with the work contemplated in any such contract, in such manner as shall seem to him to be best for the interests of the city." The board of assessors are directed in the same section " to assess upon the property benefited in the manner provided by law for making assessments for local improvements the expenses which shall be actually incurred by the mayor, aldermen and commonalty for such work, which sums so assessed (the section declares) shall be a lien upon such property, and all provisions of law relative to the collection of assessments for local improvements in said city shall apply thereto."

The provision in this act in respect to the assessment is identical with the provision in the prior special act of March 30, 1871. But the contract with Quirck having been made under the act of April 18, 1871, the latter and not the prior act applied to the case, and if it was in force when the assessment in question was made, was the authority for making the assessment. If in force at that time it would be necessary to determine whether the provision directing the assessors to assess the expenses " actually incurred " in making the improvement upon the property benefited, was repugnant to the limitation contained in the act of 1840, and operated as a repeal of the 7th section. But the act of April 18, 1871, was repealed by section 119, chap. 335 of the laws of 1873, saving only any right accrued, or legal proceeding commenced thereunder. The assessment in question had not then been made, and by the repeal the rule of assessment declared in the 5th section of the act of April 18, 1871, was abrogated. But this repeal did not leave the case unprovided for. By chap. 580 of the laws of 1872, it was provided that no contract for the regulating, grading, etc., of streets, or for building sewers, made within five years before the act was passed by any department or officer of the city of New York, in the name, on behalf of, or for the benefit of the mayor, aldermen or commonalty, should be held valid in case there was any defect of authority in the department, or officer by whom the contract was made, or

other irregularity or omission specified in the act, unless certain commissioners named therein should certify in writing that there was no fraud in the making or performance thereof. In case such certificate was made, the contracts so certified became binding upon the city. The contract with Quirck for regulating 135th street, was submitted to the commissioners in June, 1872, who certified that no fraud had been perpetrated in relation to the contract, or in the performance thereof. The fifth section of the act made provision for the assessment of expenses incurred for work done under contracts approved by the commissioners as follows: " The Comptroller shall certify to the board of assessors of the said city the total amount of all the expenses which shall have been paid or incurred by the mayor, aldermen and commonalty of the said city, for work, labor and materials under the several contracts and agreements embraced within the provisions of the first section of the act; and the said board of assessors are hereby authorized and required to assess, in the manner provided by law upon the property benefited by the several improvements specified in the said contracts or agreements respectively, such expenses as shall be so certified by the Comptroller; *and all the provisions of law in relation to making, entering and collecting assessments for local improvements in said city, shall apply to every such expense and assessment.*"

Quirck completed his contract in the fall of 1873, and the work was accepted by the proper authorities December 8, 1873. On the 5th of January, 1874, the Comptroller certified in writing to the board of assessors that the total expenses incurred for the work was $186,087.86. The certificate recited that the contract with Quirck had been approved by the commissioners appointed and acting under chapter 580 of the Laws of 1872, and that the certificate was made pursuant to the fifth section of the act. The assessors subsequently laid the assessment specified in the certificate. Upon these facts it must be assumed that the contract with Quirck came within the purview of the act of 1872, and was

properly submitted to the commissioners under its provi-
sions. It follows, therefore, that the fifth section of the act
contains and prescribes the rule for assessing the expense of
the improvement of 135th street.

We are then brought to the question whether under this
section the property of the petitioners could be assessed for
more than one-half of its assessed value, or in other words,
does the statute of 1840 apply to the case. The total amount
of the expenses are to be certified, and the board of asses-
sors are to assess such expenses as shall be certified upon the
property benefited. Standing alone, this language would
seem to authorize and require that the whole expense of the
improvement should be charged as a local tax upon the prop-
erty benefited, without regard to the assessed value or other
limitation. But the section also declares that all the provi-
sions of law in relation to making, entering and collecting
assessments for local improvements, shall apply to assess-
ments made thereunder.

The seventh section of the act of 1840 was a law in rela-
tion to the making of assessments. It applies to assessments
made under the fifth section of the act of 1872, unless it is
so repugnant to the other provisions therein that they cannot
stand together. If the primary intent of the section was to
charge the whole expense on the property, although it may
exceed one-half its assessed value, then we have the case of a
repeal by implication of the seventh section of the act of
1840, and effect is to be given to this intent, although other
and inconsistent words are found in the same section. The
leaning of courts is very strong against holding statutes to
be repealed by implication. In *Foster's Case* (11 Rep., 59),
it is said: "The subsequent statute effects a repeal only so
far as it is clearly and indisputably contradictory and con-
trary to the former act in the very matter, and the repug-
nancy such that the two acts cannot be reconciled." The
rule applies with great force when the effect of holding a
former statute repealed by implication would be to change
the settled policy of the law upon the subject to which the

later statute refers. It is the duty of the court to reconcile if possible the two statutes as to which a repugnancy is claimed, so that if possible both may stand. We are of opinion that it was not the intent of the fifth section of the act of 1872. to repeal the limitation in the act of 1840, as applied to improvements under contracts included in that section. It is to be observed that the whole expense of improvements made, under those contracts may be charged on the property benefited, notwithstanding the limitation in the act of 1840. That statute does not prohibit the assessment of the entire expense of a local improvement upon the property benefited, except in cases where such expense exceeds one-half the assessed value. In many, and probably in most cases, the total expense of the improvements made under the contracts mentioned in the fifth section of the act of 1872, may be collected by local tax, without infringing upon the statute of 1840. To construe the statute of 1872 as a repeal of the act of 1840 would lead to this anomaly: the property on the line of the improvements made under the contracts mentioned in the first section of the act, would be charged with the whole expense without limitation, while property improved under contracts not needing the sanction of the commissioners to give them validity, would be protected by the act of 1840 against assessments exceeding one-half its assessed value. This inequality cannot be supposed to have been intended by the legislature. Moreover, the construction suggested would require that the intention should be attributed to the legislature of changing the rule of assessment for improvements made under contracts within the act of 1872, to the disadvantage of property owners, after the improvements had been ordered and the contracts made, and the work had been partially performed.

We do not deny the power of the legislature to prescribe the mode and extent of assessments for local improvements, at any time prior to the laying of the assessment; but to change the rule of assessment so as to impose an increased burden upon property owners after the work has been

ordered and contracts have been let, and when a protest against the improvements would be unavailing, does not seem to be equitable, and the statute ought not to have this construction unless this intention is clearly indicated.

We have for these reasons reached the conclusion, although not without hesitation, that by the true construction of the act of 1872, the direction to assess the whole expense of local improvements in cases within the act, on the property benefited is qualified by the subsequent clauses in the section, and is subject to the limitation imposed by the act of 1840. The assessment of the petitioner's lots to an amount exceeding one-half of their assessed value was, therefore, unauthorized, and was a substantial error, for which the assessment should be vacated under chapter 312 of the Laws of 1874. The action of the assessors was in violation of an express statute. The assessment was one which neither the city or any board or officer had power to make. The defect is fundamental, and within the principle of the case of *The Second Avenue Methodist Episcopal Church* (*supra*); recently decided in this court; the petitioner is entitled to relief under the act of 1874. An attempt has been made to impose a charge on his property by an assessment not only unauthorized, but prohibited. It is difficult to conceive what are substantial errors in an assessment, if this is not within that category.

Assuming that in ordinary cases the court has power to reduce the assessment when it exceeds the limit fixed by the act of 1840, and to affirm it to the extent of one-half of the assessed valuation of the property, it cannot be done in this case, for the reason that there was no separate valuation of the lots in the block, and no sufficient basis in the evidence for apportioning the tax. The whole block was valued at $40,000. There is no proof that the lots are of equal value, and it is quite proable that the lots on 5th avenue not included in the assessment are of greater value than the lots on 135th street.

The order of the General Term must be reversed, and the orders of the Special Term affirmed.

All concur, except CHURCH, Ch. J., and FOLGER, J., not voting.

Ordered accordingly.