(19 Misc. Rep. 340.)

In re SALISBURY (two cases).

(Supreme Court, Special Term, Seneca County. January, 1897.)

INTOXICATING LIQUORS—SALE NEAR PUBLIC INSTITUTION—HOTELS.

Laws 1896, c. 112 (Liquor Tax Law) § 24, provides that "traffic in liquors shall not be permitted" (1) within half a mile of certain public institutions; nor (2) "within 200 feet of a building occupied exclusively as a church or schoolhouse; * * * provided, however, that this prohibition shall not apply" to hotels or to saloons in existence when the law was enacted. *Held*, that the proviso applies to the first subdivision as well as to the second.

Petitions by Samuel H. Salisbury for the revocation of liquor tax certificates issued to Patrick H. Lyons and to Martha E. Acton. The petitions were submitted as one case by stipulation. Denied.

Mead & Stranahan, for petitioner.
Daniel Moran, for respondents.

WERNER, J. Each of said respondents was, at the time of the passage of the law known as the "Liquor Tax Law," lawfully engaged in conducting an hotel in the town of Romulus, Seneca county, N. Y., within one-half mile of Willard State Hospital, which is an institution owned by the public, and in which the state of New York keeps and cares for its dependent insane; and neither of said hotels is within an incorporated village or city, or within one-half mile of

the nearest boundary of any incorporated village or city. The application for the revocation of said certificates is made on the ground that material statements in the applications for the same were false, and on the further ground that the holders thereof are not legally entitled thereto. The statements in said 'applications which are alleged to be false are as follows:

"(10) May the applicant or applicants lawfully carry on such traffic on said premises under such subdivision [subdivision 1, § 11]?" "Yes." "(11) Is the applicant, or either of them, within any of the prohibitions of said act?" "No."

The alleged. falsity of these statements, which are the same in both applications, is predicated upon the language of said section 24, which we are asked to construe, and which reads as follows:

"Sec. 24. Place in which traffic in liquor shall not be permitted.—Traffic in liquor shall not be permitted,

"(1) In any building owned by the public, or upon any premises established as a penal institution, protectory, industrial school, asylum, state hospital or poorhouse, and if such premises be situated in a town and outside the limits of an incorporated village or city, not within one-half mile of the premises so occupied, provided there be such distance of one-half mile between such premises and the nearest boundary line of such village or city; nor

"(2) Under the provisions of subdivision 1 of section 11 of this act, in any building, yard, booth or other place which shall be on the same street or avenue and within two hundred feet of a building occupied exclusively as a church or a schoolhouse; the measurements to be taken from the center of the nearest entrance of the building used for such church or school to the center of the nearest entrance of the place in which such liquor traffic is desired to be carried on; provided, however, that this prohibition shall not apply to a place which is occupied for a hotel, nor to a place in which such traffic in liquors is actually lawfully carried on when this act takes effect, nor to a place which at such date is occupied, or in process of construction, by a corporation or association which traffics in liquors solely with the members thereof, nor to a place within such limit to which a corporation or association trafficking in liquors solely with the members thereof when this act takes effect may remove; provided, however, such place to which such corporation or association' may so remove, shall be located within two hundred feet of the place in which such corporation or association so traffics in liquors when this act takes effect."

In the effort to ascertain the legislative intent in the passage of the "liquor tax law," certain well-settled rules of statutory construction, which are of general application, must be invoked. The first of these is that the intention is to be deduced from a view of the whole statute, and that intention, when ascertained, will always prevail over the literal sense of the terms. In re Brooklyn Bridge, 72 N. Y. 529. Or, as the rule is stated in Smith v. People, 47 N. Y. 330: "In the construction of statutes, effect must be given to the intent of the legislature whenever it can be discerned, though such construction seems contrary to the letter of the statute." And again, in Hayden v. Pierce, 144 N. Y. 516, 39 N. E. 638: "Language, however strong, must yield to what appears to be the intention, and .that is to be found, not in the words of a particular section alone, but by comparing it with other parts or provisions of the general scheme of which it is a part." Applying these rules of statutory construction to the case before us, let us briefly examine the purpose and scope of the statute as a whole, and also the provisions of certain separate sections thereof, before devoting our attention to the language of section 24. The evident purpose of the legislature, as disclosed by the context of the

whole act, was to completely change the system under which the liquor traffic had previously been carried on, without invading or abridging the vested rights of persons lawfully engaged in said traffic at the time of the change in the law. Whether those lawfully engaged in said liquor traffic at that time had in fact any vested rights in the premises, it is not necessary now to determine. It is perfectly clear that the legislature, in the sweeping changes created by its enactment of chapter 112 of the Laws of 1896, sought to minimize the hardships incident to this revolution in the law by certain well-defined exceptions to the stringent provisions of the statute in favor of those lawfully engaged in the liquor traffic at the time of the passage of said act. These exceptions evince a disposition on the part of the legislature to deal as equitably as the enforcement of the new law would permit with those who had lawfully acquired rights or privileges under the old law. Under section 4 of said act, licenses lawfully granted under previous statutes which were valid on March 23, 1896, when this act took effect, were continued in force until June 30, 1896. Section 17, subd. 6, of said act requires the written consent of the owner of the premises in which the traffic in liquor is to be carried on to be filed simultaneously with the application for the tax certificate, "except in cases where such traffic in liquors was actually lawfully carried on in said premises so described in said statement at the time of the passage of this act, in which case such consent shall not be required." Subdivision 8 of the same section makes it necessary to obtain the consent of the owners of buildings occupied exclusively as dwellings which are within 200 feet of the premises in which the traffic in liquors is to be carried on, but "such consent shall not be required in cases where such traffic in liquors is actually lawfully carried on in said premises so described in said statement when this act takes effect." The language of the second part or subdivision of said section 24 concededly excepts from its operation hotels and places in which the traffic in liquors was actually lawfully carried on when this act took effect, which were within 200 feet of churches or schoolhouses. If, as appears from the language of these sections just quoted, it was the purpose of the legislature to ameliorate, so far as possible, the condition of those engaged in the liquor traffic at the time of the passage of this act, by relieving them from the hardships and apparent inequities of the sudden and sweeping changes in the law, it is quite impossible to discern, either in the language of the sections just quoted or in the general context of the act, any intent to discriminate against hotel keepers or dealers in liquors whose places of business were within one-half mile of any of the institutions enumerated in subdivision 1 of section 24. It is difficult to understand upon what theory the legislative intent to effect such a result could be reconciled with the saving clauses in favor of hotels, saloons, and clubs which, at the time of the passage of this act, were in operation within 200 feet of schoolhouses or churches. If there were good reasons for the reservation of privileges to those who were, at the time this law went into effect, actually lawfully engaged in the liquor traffic within 200 feet of the schoolhouse or church, there are quite as cogent reasons for similar reservations in

favor of those who, at the same time, were actually engaged in said business within one-half mile of any of the said enumerated public institutions, and at least one-half mile distant from the nearest boundary of an incorporated village or city.

We could, if it were necessary, readily suggest several obvious arguments in favor of discrimination against places devoted to the liquor traffic within 200 feet of a church or schoolhouse, which could not, with the same urgency or logic, be applied to such places located within said one-half mile limit. But this feature of the discussion is so transparent that it seems to us a work of supererogation to dwell longer upon it. We think it is clearly consonant with the spirit of the act to hold that the same reservation which is conceded to apply to hotels and places devoted to the liquor traffic which were within 200 feet of a schoolhouse or church at the time of the passage of this act applies to hotels and places devoted to the liquor traffic which were within one-half mile of the institutions enumerated in subdivision 1 of said section 24, and at least one-half mile from the nearest boundary of an incorporated village or city. If it were necessary, it would be the duty of the court, within the rules of statutory construction above enunciated, to read into said section 24 such an express proviso in favor of hotels and places devoted to the liquor traffic within said one-half mile limit in which the liquor traffic was actually lawfully carried on at the time of the passage of this act, as to bring the same into harmony with the evident spirit and purpose of the whole act, and to make effectual the palpable intent of the legislature. But the court does not seem to be driven to this extremity. The plain interpretation of said section 24, when read as a whole, and fairly construed, is that there is but one prohibition, which is contained in a single, independent, principal clause, to wit: "Traffic in liquors shall not be permitted." This arbitrary prohibition is followed by an enumeration of the places to which it applies, to wit, the institutions designated in the first dependent or subsidiary sentence, and the places named in the second dependent or subordinate clause. These two latter clauses are not dependent upon each other, but have a common dependence upon the first or principal sentence. Then follows the proviso, which is not in terms limited to the places named in the second dependent sentence, and which, so far as it applies to this case, reads as follows: "Provided, however, that this prohibition shall not apply to a place which is occupied for a hotel, nor to a place in which such traffic in liquors is actually lawfully carried on when this act takes effect." The portion of the sentence which follows that just quoted refers entirely to clubs, and is as independent of and unconnected with the general proviso sought to be invoked in protection of the respondent's rights herein, as though it were in fact an entirely separate sentence in a distinct paragraph.

Although the punctuation and division of sentences will ordinarily be made to yield to the obvious spirit of a statute, there is, in the present case, apparently no necessity for the application of this rule. With much greater care than is ordinarily evinced in the composition of laws, the legislature seems to have so co-ordi-

nated the punctuation of the letter with the spirit of the statute as to remove all doubts concerning its construction, when tested by the rules of correct rhetoric.   The division of the dependent clauses from each other by semicolons, and their separation from the clause from which they both depend by a comma, is in itself an indication of the legislative intent to treat the proviso above referred to as applicable to the subject-matter of each dependent clause.   If the legislature had intended to limit said proviso to the second dependent clause, it could certainly have more clearly expressed a purpose so plainly antagonistic to the spirit of the whole statute.   But, even if there were doubt as to the technical correctness of the composition of this statute, the court would still be at liberty, and indeed called upon, in construing the same, to adhere to the plain, common-sense interpretation of the words in the effort to ascertain the true spirit and meaning thereof, and when that is done the refined, technical rules of grammar and rhetoric must yield, if justice requires it.   The statements in said applications which are challenged as false were in fact true under our construction of this statute, and these proceedings must therefore be dismissed, with $20 costs in favor of each respondent.

Ordered accordingly.