In the Matter of INTER-COUNTY TITLE GUARANTY AND MORTGAGE COMPANY, Petitioner, *v.* STATE TAX COMMISSION, Respondent.

Third Department, January 29, 1970.

*Donovan, Donovan, Maloof & Walsh* (*John P. Walsh* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Vincent P. Molineaux* and *Ruth Kessler Toch* of counsel), for respondent.

STALEY, JR., J. This is a proceeding under article 78 of the CPLR (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County), to review a determination of the State Tax Commission which denied petitioner's application for revision or refund of an additional franchise tax assessment paid for the year 1962, and sustained the additional franchise tax assessment imposed under section 187 of the Tax Law.

Petitioner is a title insurance corporation organized under article 13 of the Insurance Law. Its annual income results from fees charged for the issuance of policies of title insurance for guaranteeing searches and abstracts, and for miscellaneous searches and the issuance of certificates or reports. The fees charged are specified in its rate manual which is filed with the New York State Insurance Department pursuant to section 440 of the Insurance Law.

Title insurance corporations are subject to an annual franchise tax imposed by subdivision 1 of section 187 of the Tax Law payable at the rate of 2% on all gross direct premiums, less return premiums thereon, written on risks located or resident in the State.

For the year 1962 and years prior thereto, petitioner filed an annual statement with the Superintendent of Insurance as required by section 26 of the Insurance Law. The annual statement is filed upon a form promulgated by the National Association of Insurance Commissioners and is prescribed by the Superintendent of Insurance, who is a member of that National Association. The statement includes a schedule of operating income and expenditures. The operating income schedule lists as separate items (1) title insurance premiums earned, and (2) service charges. The item for service charges is further subdivided into (a) title examinations, (b) searches and abstracts, (c) surveys, and various miscellaneous charges. In such statement petitioner reported as title insurance premiums earned, an amount representing 1/10 of 1% of the face amount

of the policies of title insurance issued. Petitioner reported as a service charge for title examinations the difference between the total fees received for the issuance of the insurance policies and the smaller amount of 1/10 of 1% of the face amount of the policies.

Petitioner filed quarterly reports for tax purposes with the State Tax Commission during the year 1962 and computed taxes due on the basis of 2% of the title insurance premiums earned as set forth in the report to the Superintendent of Insurance. Petitioner did not report to the State Tax Commission any amounts reported to the State Insurance Department as service charges for title examinations, service charges for searches and abstracts, and miscellaneous service charges.

On February 19, 1965 the State Tax Commission issued an additional assessment for taxes due for the year 1962 based on the amount earned by petitioner during that year for fees charged for title insurance policies which were reported as service charges for title examinations, for guaranteed searches and abstracts, and for miscellaneous searches.

The main issue on this appeal is whether or not the statutory definition of premiums as contained in section 550 of the Insurance Law is intended to include those amounts charged for title examinations, guaranteed searches and abstracts, and miscellaneous searches.

Subdivision 1 of section 550 of the Insurance Law provides as follows:

"1. As used in this article the following terms shall have the meanings herein assigned to them, unless the context otherwise requires: * * *

"'Premium' includes all amounts received as consideration for insurance contracts or reinsurance contracts, other than for annuity contracts, and shall include premium deposits, assessments, policy fees, membership fees, and every other compensation for such contract."

From 1928, when petitioner commenced business, through 1962, it filed its quarterly and annual tax reports, and computed the franchise tax due on the amount of gross direct premiums as required to be reported in the annual statement filed with the State Superintendent of Insurance, pursuant to section 26 of the Insurance Law. During this period the charges for title examinations were not included in the amount of gross direct premiums, and were not subject to tax which practice was acquiesced in by the State Tax Commission. In 1965 the State Tax Commission reversed its position and assessed petitioner for the year 1962 an additional amount for franchise tax on

the ground that the title examination charges are " premiums " within the meaning of section 187 of the Tax Law.

The administration of title insurance company taxation in this State is divided between the Insurance Department, pursuant to the Insurance Law, and the Department of Taxation and Finance, pursuant to the provisions of the Tax Law. The controlling statutes in both cases deal with the same general subject matter and are *in pari materia*. They must be read together and applied harmoniously and consistently. (*Smith* v. *People*, 47 N. Y. 330; *Matter of Guardian Life Ins. Co. of Amer.* v. *Chapman*, 302 N. Y. 226.)

No policy of title insurance is issued without an examination of title and consequently a title examination is a condition precedent to the issuance of the title policy. The title examination is a necessary incident of the insuring of the risk, and generally the title examination is made solely for petitioner's benefit rather than at the request of the applicant. The fee for the issuance of a policy of title insurance varies according to the face amount of the policy and is computed by applying the appropriate rate specified in the manual for the type and amount of insurance.

The case of *Matter of City Title Ins. Co.* v. *Superintendent of Ins. of State of N. Y.* (31 Misc 2d 1012, affd. 16 A D 2d 768, affd. 13 N Y 2d 686 [May 29, 1963]) apparently influenced the Superintendent of Insurance and the State Tax Commission to review their interpretation of the definition of " premium " as contained in subdivision 1 of section 550 of the Insurance Law, and to determine the propriety of allocating the cost of title examinations to premiums and using the combined amounts of premiums as reported as 1/10 of 1% of the face amount of the policies and the cost of title examinations as the premium tax base.

In the *City Title Ins. Co.* case (*supra*) the petitioner sought to set aside the determination of the Superintendent of Insurance which disapproved a proposed premium manual on the ground that the premium rates listed therein for title insurance did not include the charges for title examination preceding the issuance of the title policies. Special Term held that the charge for the title examination is an integral part of the total cost of the title insurance, and that the inclusion of such charge in the premium rate is subject to the regulatory powers of the Superintendent of Insurance. Special Term's determination was affirmed by the Appellate Division and Court of Appeals, without opinion. In its opinion Special Term stated (31 Misc 2d, at p. 1013) as follows: " Respondent has found, on the

basis of the foregoing circumstances and others, that where title insurance is issued, the cost of the title examination upon which the insurer relies in issuing its policy is an integral part of the charge for such title insurance, and that the cost of the title examination, in such a case, cannot reasonably and realistically be treated as a separable and independent item, beyond the regulatory powers of respondent. Petitioner's attempt to divide the total charge made by it into (1) insurance premiums and (2) cost of title examination is found by respondent to be arbitrary and unreasonable. Although the expense of examining a title remains approximately constant, regardless of the amount of insurance involved, petitioner's charges for title examination, as well as its so-called insurance premiums, rise as the amount of insurance increases. This is a circumstance which tends strongly to support respondent's determination that petitioner's charges for title insurance necessarily include its charges for the title examination made in order to determine whether or not to issue the insurance.''

Although the *City Title Ins. Co.* case involved the regulatory powers of the Superintendent of Insurance relative to title insurance rate approval, it was consistent for the State Tax Commission to revise its procedure insofar as the franchise tax imposed on title insurance corporations was concerned, and to conform the definition of '' premium '' as stated in the Insurance Law to the holding of the courts. The additional assessment issued by the State Tax Commission under review here, as it relates to cost of title examinations and the determination upholding the assessment are in conformity with the *City Title Ins. Co.* decision and should be confirmed. (*Matter of City Tit. Ins. Co.* v. *Superintendent of Ins. of State of N. Y., supra*; see, also, *Lawyers Title Ins. Corp.* v. *Board of Ins. Comrs.*, 207 S.W. 2d 972 [Tex. Civ. App.].)

The cases of *Matter of American Credit Ind. Co. of N. Y.* v. *State Tax Comm. of State of N. Y.* (31 A D 2d 27) and *Matter of Consolidated Edison Co. of N. Y.* v. *State Tax Comm. of State of N. Y.* (24 N Y 2d 114) relied upon by petitioner are clearly distinguishable, and do not support petitioner's contentions. In the *American Credit Ind. Co.* case the question involved was whether collection fees earned, pursuant to the terms of a contingent fee schedule embodied in a credit insurance policy, upon the collection by the insurer of accounts of the insured's trade customers, were subject to the franchise tax specifically levied on '' premiums ''. This court held that the collection services were not paid for in the first instance and that the '' provision for enlisting the services of the company

as a collection agency to collect accounts which have not become claims under the policy, which may never become such, and which, indeed, may not even be insured under the policy, seems to us independent of the insuring provision for which consideration is paid in the form of a premium calculated according to the risk. The payment of a fee, additional to the basic premium, for collateral benefits extended under a policy does not necessarily constitute the payment of a premium or additional premium ''. (31 A D 2d, at p. 31.)

Therefore, the fees subjected to tax in the *American Credit Ind. Co.* case did not fall within the definition of premium which '' may be defined as the agreed price for assuming and carrying the risk — that is, the consideration paid an insurer for undertaking to indemnify the insured against a specified peril.'' (29 Am. Jur., Insurance, § 501.)

Petitioner further relies on the *Consolidated Edison Co.* case (*supra*) as a basis for estoppel against the State Tax Commission from changing its interpretation of the term '' premium '' because of its long-standing acceptance of the amount recognized as the tax base for the franchise tax imposed by subdivision 1 of section 187 of the Tax Law. In the *Consolidated Edison Co.* case the court agreed that the State Tax Commission could not be estopped from changing its interpretation of a statute citing *Matter of Marx* v. *Goodrich* (286 App. Div. 913). In addition the court held as a matter of law that the taxes imposed and reviewed were illegal and void.

The charge made for the title examination, when made for the purpose of the issuance of a title insurance policy, is an unavoidable cost of the insurer, and is no different from any of the other charges stated within section 550 of the Insurance Law as constituting premiums. The payment for the title search is a condition precedent to the incurring of the risk by the title company. Such charges are, therefore, properly includable in the amount of premiums earned, and subject to the franchise tax. However, the charges for guaranteed searches and abstracts, and charges for other miscellaneous searches do not fall within the category of premiums, and should be eliminated from the premium tax base.

The determination should be modified so as to eliminate from the amount of additional premiums subjected to the additional assessment, the charges for guaranteed searches and abstracts, and miscellaneous searches, and, as so modified, confirmed, with costs, and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.

HERLIHY, P. J., REYNOLDS, GREENBLOTT and COOKE, JJ., concur.

Determination modified so as to eliminate from the amount of additional premiums subjected to the additional assessment, the charges for guaranteed searches and abstracts, and miscellaneous searches, and, as so modified, confirmed, with costs, and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.