# Commonwealth, Appellant, *v.* The Equitable Life Assurance Society of the United States.

*Taxation—State taxation—Insurance companies—Act of June 28, 1895, P. L. 408.*

The tax imposed under the Act of June 28, 1895, P. L. 408, upon the premiums of foreign insurance companies received from business done within the State of Pennsylvania, is to be collected upon all premiums received by the company from policy holders, residents of Pennsylvania, even though paid directly to the home office or to agencies outside of Pennsylvania.

FELL, C. J., and BROWN, J., dissent.

Argued May 20, 1912.   Appeal, No. 23, May T., 1912, by Commonwealth of Pennsylvania, from order of C. P. Dauphin Co., Com. Docket, 1910, No. 436, directing judgment in favor of defendant in case of Commonwealth of Pennsylvania v. The Equitable Life Assurance Society of the United States.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

. Appeal by defendant from account of the insurance commissioner settling tax on gross premiums.   Before MCCARRELL, J., without a jury, under the Act of April 22, 1874, P. L. 109.

The facts are stated in the opinion of the Supreme Court.

· The court entered judgment for the defendant.   The plaintiff appealed.

*Error assigned,* inter alia, was the action of the court in entering judgment in favor of the defendant.

*Wm. M. Hargest,* Assistant Deputy Attorney General, with him *John C. Bell,* Attorney General, for appellant. —The language of the statute was intended to include and does include the payment of premiums by residents of this Commonwealth, whether collected through agencies in Pennsylvania or not: Swing v. Munson, 191 Pa. 582; Com. Mut. Fire Insurance Company v. Sharpless, 12 Pa. Superior Ct. 333; Penna. Lumbermen's Mutual Fire Insurance Co. v. Meyer, 197 U. S. 407 (25 Sup. Ct. Repr. 483).

*M. E. Olmsted,* with him *Alexander & Green, Thos. DeWitt Cuyler* and *A. C. Stamm,* for appellee.

OPINION BY MR. JUSTICE POTTER, February 24, 1913:

The Act of June 28, 1895, P. L. 408, Section 1, provides that "hereafter the annual tax upon premiums of

insurance companies of other states or foreign governments, shall be at the rate of two per centum upon the gross premiums of every character and description received from business done within this Commonwealth within the entire calendar year preceding." The Equitable Life Assurance Society of the United States, whose home office is in New York, transacts business in Pennsylvania. From a deposition of its president, made part of the record in this case, by agreement, it appears that the society does business in all the states of the Union except two, and that in each state where it does business it is licensed under the laws thereof, and in all of the states save one, in which it is licensed, the laws require it to pay a tax upon premiums. The business transacted by the society is the soliciting of insurance on lives by means of agents, and the issuing and renewing of policies of insurance, and collecting premiums thereon. In the State of Pennsylvania the society maintains three so-called cashier agencies, one at Philadelphia, one at Pittsburgh, and one at Allentown, and in each of said agencies there is a cashier whose business it is to receive renewal premiums. It seems, however, that the premiums for insurance written and maintained upon the lives of residents of Pennsylvania, are not all paid to these agencies in Pennsylvania. Some of them are sent to the home office in New York, or are paid to the society through agencies outside the State of Pennsylvania. In making up its returns for taxation for the years 1906 to 1910, inclusive, the society did not include these premiums paid by residents of Pennsylvania for insurance upon their lives, which were sent to points outside the State. The accounting officers of the Commonwealth made a settlement of the amount due for taxes during the years in question, in which they claimed the tax upon all premiums received by the society from the business of life insurance done within the Commonwealth, no matter whether the premium therefor was paid to an officer within or without the State. From the settlements

thus made, the society appealed to the Court of Common Pleas of Dauphin County, contending that it was liable only for the tax upon premiums paid to an agency within the State; and, having paid these, it was not liable for anything further. By stipulation between the parties, a trial by jury was waived, and the case was tried before a court under the provisions of the Act of April 22, 1874, P. L. 109. The trial judge sustained the contention of the society, and held that it was subject to taxation only upon premiums paid to an agency within the State, and directed judgment to be entered, subject to exception, for the defendant, and against the Commonwealth. Exceptions were filed, which were overruled, by the court below, and judgment was ordered to be entered in accordance with the opinion of the trial judge. The Commonwealth has appealed, and assigns for error the dismissal of its exceptions, and the order directing judgment to be entered for the defendant.

In order to determine the question in controversy we must ascertain the source of the premiums which were paid to agencies outside the State. If they were received by the society from business done within the Commonwealth, then they were subject to the tax. If they did not come from such business they were not subject to the tax. What, then, is the meaning of the words "business done within this Commonwealth" as used in the statute taxing gross premiums of every character and description, received from such business? Manifestly the business in which the society is engaged is that of insuring lives; that is, in furnishing protection to the beneficiaries named in the policies against loss from the death of the insured, to the amount designated in the policy. Furnishing this protection is the business to be done by the society within this Commonwealth, as contemplated by the statute, which fixes the amount of the tax which it, as an insurance company organized under the laws of another state, is to pay for the privilege of entry and doing this business within this Com-

monwealth, and with our people, its residents. The court below seems to have unduly narrowed its inquiry, and contented itself with asking whether the mere receipt of premiums at an outside office was doing business within this Commonwealth. Certainly not, if that was all there was to it. But the answer to that question is not at all decisive of the real inquiry here. The defendant society does not exist merely for the collection of premiums; that is a mere incident to the great and beneficent purpose for which it exists. When it comes within our borders to do business, it renders a service; it furnishes protection and indemnity to its beneficiaries, residents of the State of Pennsylvania. That is the business which it does in Pennsylvania, and that is the purpose for which it seeks and is granted permission to enter. Furnishing that service, that insurance against loss, it makes a proper charge to cover the cost of the service which it renders, and that charge is the premium. It is simply payment for the valuable service it renders. Whether that service be paid for on the spot where the service is rendered, or whether the amount be remitted to the home office, does not change the character of the business done, and for which recompense or payment is made. If it happens to be made to an agency in Pennsylvania the defendant society admits without question that it is received from business done within this Commonwealth, and is subject to the tax. How can the fact, or the character, of the business done for the benefit of residents of Pennsylvania, be altered or affected in any way, by the manner in which, or the place where, the payment for the business done and the service rendered, is made? Clearly it cannot be so affected. If the society was merely engaged in collecting premiums, without regard to the business or service for which those premiums were paid, there would be force in the suggestion that premiums collected outside the State do not constitute doing business within the State. But when we reflect that the tax is placed upon the amount of the premium

merely as a measure of the volume of insurance business done within the State, it is apparent that determining the place where the premium is received is not the proper test to apply in order to ascertain what that business was, or in what it consisted.

The suggestion is made in the opinion of the trial judge that the business of the society is completed when the policy is issued, and the first premium paid. This is a mistake. Renewal premiums must be paid from year to year in most cases, to keep the policy alive. Unless they are paid, the service rendered, the insurance furnished comes to an end. In so far as the statute is concerned, the payment of each year's premium stands upon its own footing. It is payment for the insurance furnished, the business done during the current period. The taxing statute makes no difference between the first premiums and renewal premiums. The tax is to be paid upon the gross premiums of every character and description received from business done within this Commonwealth within the entire calendar year.

In considering the question here involved, but little aid can be obtained from the decisions as to what constitutes "doing business" in the State, within the meaning of the statute requiring foreign corporations to register before doing business here. That is an entirely different question. In the present case, the defendant society was authorized to do business in this State, and it transacted a very large amount of insurance business upon which the tax was admittedly due. The only question here is as to the amount of the tax. For precisely the same service, rendered to residents of this State in the one case where payment for that service is made to an agency in Pennsylvania, it admits its liability to the tax; but where a payment is made outside the State, it denies liability. We see no ground for any such distinction. Under the statute the test is in the source of the premiums. If they arose from, or in other words, were payment for, business done within this Common-

wealth, they are subject to the tax, without regard to the location of the agency to which they may be paid.

The assignments of error are sustained.  The judgment of the court below is reversed, and the record is remitted that judgment may be entered in the court below for the balance due to the Commonwealth in accordance with the settlement made by the accounting officers.


DISSENTING OPINION BY MR. JUSTICE BROWN, February 24, 1913:

I would affirm this judgment on the well-considered opinion of the court below.  The tax which the Commonwealth may collect upon insurance premiums under the Act of 1895 is upon those "received from business done within this Commonwealth within the entire calendar year preceding."  I am at a loss to understand how it can be held that this includes premiums paid at the home office in New York, in accordance with the terms of policies which were issued to nonresidents outside of the State.  If the legislature had intended that the Act of 1895 was to include them, it would have then so declared, instead of waiting until 1911 to do so, when, by the Act of June 1, 1911, P. L. 607, Section 16, it provided that "Every insurance company or association of another state or foreign government, authorized to do business in this Commonwealth, shall make report to the insurance commissioner, on or before March first of each year, under oath of its president or secretary, showing the entire amount of premiums of every character and description received from business transacted in the Commonwealth during the year, or fraction of year, ending with the thirty-first day of December preceding, whether said premiums were received in money or in the form of notes, credits, or any other substitute for money, or whether the same were collected in this Commonwealth or elsewhere, and pay into the state treasury the requisite tax upon all such premiums."  I feel that

what is true of the first class of policies is equally so of each of the other three classes, the premiums upon which the Commonwealth would tax under the Act of 1895.

MR. CHIEF JUSTICE FELL concurs in this dissent.