[Civ. No. 1904. Fourth Appellate District.—May 26, 1936.]

WESTERN TRAVELERS ACCIDENT ASSOCIATION OF CALIFORNIA (a Corporation), Appellant, v. CHARLES G. JOHNSON, State Treasurer, etc., Respondent.

Leo E. Anderson and Meserve, Mumper, Hughes & Robertson for Appellant.

U. S. Webb, Attorney-General, and Neil Cunningham, Deputy Attorney-General, for Respondent.

MUNDO, J., *pro tem.*—This is an action to recover taxes paid under protest to the defendant State Treasurer. Plaintiff was organized under the laws of this state July 6, 1927. Prior to this date an association by the name of Western Travelers Accident Association of Nebraska, carried on a mutual benefit insurance business in Nebraska. This Nebraska association was licensed in 1924 to do business in California. On September 15, 1927, plaintiff offered to assume all the liabilities of the Nebraska association in exchange for all of the assets thereof. Each member of the Nebraska association who desired to continue his or her insurance made written application to plaintiff. The application contained a provision authorizing appellant to issue a new policy or adopt the old policy of the Nebraska association as its (plaintiff's) policy. No new policies were issued; the only change being that instead of paying their assessments to the old company in Nebraska, they mailed their assessments to plaintiff at Los Angeles. The offer of plaintiff was approved by the stockholders of the Nebraska association on January 28, 1928, and on February 9, 1928, it was accepted by the executive board of said association, subject to the California association (plaintiff) qualifying in Nebraska. The California association qualified in Nebraska and received a permit to do business there. Thereupon the assets of the Nebraska associa-

tion were transferred to plaintiff, and thereafter plaintiff carried on the business. The Nebraska association was dissolved and its license to do business in California was surrendered. The effect of the transaction was simply a reorganization, transferring the association from a Nebraska corporation to a California corporation. After this was accomplished the business was conducted by plaintiff under its California license.

All contracts of insurance written in the Nebraska association were made and entered into at Omaha, Nebraska. Plaintiff association is maintained by the voluntary acts of its members paying the assessments as levied and all payments thereof are made by mail addressed to plaintiff at Los Angeles. The amount collected in 1930 from members residing in California amounted to $7,010, as against a total collection from members residing outside the state, amounting to $56,348. The figures also show that the total amount collected from holders of Nebraska contracts amounted to $54,949 and that the total collected for the year was $63,358.

All assessments levied by plaintiff are used to maintain reserves, pay losses and expenses of operation; plaintiff makes or pays no rebates, refunds or dividends.

In 1931 the board of equalization of the state of California levied and assessed against plaintiff as tax payable to the state of California a sum equal to 2.607 per cent upon "the amount of gross premiums received from all business" done by plaintiff under the provisions of section 3664b of the Political Code. Plaintiff paid the amount of the tax under protest. It then filed this action to recover the amount so paid. The trial court rendered judgment in favor of the State Treasurer and ordered that plaintiff take nothing.

The questions presented by this appeal taken by the plaintiff involve the construction of two phrases contained in section 3664b of the Political Code under which the tax was levied on the plaintiff association. The two phrases to be construed are: "gross premiums" and "business done in this state". This section provides:

"Every insurance company or association doing business in this state shall annually pay to the state a tax of two and sixty hundredths per cent upon the amount of the gross premiums received upon its business done in this state . . . "

Appellant points out that this section does not provide for the levy of any tax upon assessments, and it cites authorities from other jurisdictions to the effect that assessments are not included within the term "premiums" as applied to an association such as appellant, which pays no rebates or benefits and does not operate for profit. Whatever may be the rule elsewhere, it is established in this state that the phrase "gross premiums" includes both premiums and assessments. (*Bankers Life Co.* v. *Richardson,* 192 Cal. 113 [218 Pac. 586].) Accordingly, appellant would be required to pay a tax on the assessments if the business is done in this state.

■ A study of the law upon this subject reveals two lines of decisions, one holding that a foreign insurance corporation which had transacted business within the jurisdiction of a state continued, notwithstanding its withdrawal from the state, to be subject to service of process within the state, in actions arising out of the business so transacted (*Connecticut Mut. L. Ins. Co.* v. *Spratley,* 172 U. S. 602 [19 Sup. Ct. 308, 43 L. Ed. 569]) ; and the other holding that the mere continuance of the obligation of existing policies in a foreign life insurance company, held by resident policyholders, together with the receipt of the renewal premiums upon these policies at the company's home office, may not be treated by the state as constituting in itself the transaction of a local business, justifying the imposition of an annual privilege tax upon the amount of the premiums so received. (*Provident Savings Life Assur. Society* v. *Kentucky,* 239 U. S. 103 [36 Sup. Ct. 34, 60 L. Ed. 167, L. R. A. 1916C, 572].) The Spratley case, *supra,* related to the validity of the service of process upon foreign corporations, while the Provident case deals with the power of the state to treat the mere continuance of the obligation of the existing policies held by resident policyholders as the transaction of a local business justifying the imposition of an annual privilege tax in the absence of the actual conduct of business within the limits of the state. In pointing out the distinction between these two lines of authority, the court in the Provident case refers to the case of *Mutual Res. F. Life Assn.* v. *Phelps,* 190 U. S. 147 [23 Sup. Ct. 707, 47 L. Ed. 987], and says:

"Thus, in the Phelps case . . . the court of appeals of Kentucky had decided that the withdrawal of the company from the state did not terminate the statutory agency for the ac-

ceptance of service which had been created as a condition of the company's admission; the granted authority continued with respect to the business transacted. . . . But a distinction obtains when the question is whether the mere continuance of the obligation to resident policy holders under the existing policies can be regarded as constituting in itself the transaction of a local business.'' (See, also, *Hunter* v. *Mutual Res. L. Ins. Co.,* 218 U. S. 573 [31 Sup. Ct. 127, 54 L. Ed. 1155, 30 L. R. A. (N. S.) 686].)

A'ppellant relies principally upon the Spratley case, *supra*, and cases following the rule therein set forth. These cases, as we have seen, are concerned with the validity of the service of process upon a company after it has assumed to withdraw from the state. Other cases relied on by appellant, such as *Commonwealth* v. *Equitable L. Assur. Society,* 239 Pa. 288 [86 Atl. 787], are cases where the company actually does business in the state and maintains agencies there, although some of the premiums are paid directly to the home office out of the state. In the Equitable case the company did more than merely receive the premiums at its home office; it was licensed to do business in Pennsylvania and it transacted a large amount of business there.

Another case cited by appellant is *Commonwealth* v. *Provident Savings L. Assur. Society,* 155 Ky. 197 [159 S. W. 698]. This case referred to the Equitable case and erroneously construed them to be similar. Upon appeal to the United States Supreme Court the decision was reversed and the court pointed out the distinction between the two. The question in the Equitable case was as to the permissible measure of a tax exacted for a privilege admittedly exercised. (*Provident Sav. L. Assur. Society* v. *Kentucky, supra.*)

It will be seen from the foregoing that the mere continuance of the obligation of the policies issued by the Nebraska association, which were assumed by the appellant, would not constitute the doing of business in Nebraska for which a privilege tax could be exacted. It is immaterial whether appellant issued new policies or simply adopted the policies previously issued; the end result would be a continuation of the obligation of the company to its members.

At the time appellant was organized under the laws of California, pursuant to the provisions of sections 453d and 453q of the Civil Code, the law required such a corporation

to have at least 1,000 members who must have made written application for membership or insurance in the corporation and must have paid to the treasurer of the corporation the sum of $25,000. The by-laws of appellant corporation conformed with this requirement. The by-laws read: "Membership in this association shall be acquired by the acceptance by the association as hereinafter provided of the written application for membership and the issuance to such applicant of a policy. . . . "

Every contract of insurance issued by a corporation such as appellant. must be founded upon a written application therefor. (Civ. Code, sec. 453j.)

The applications which were sent by the members of the old Nebraska company to appellant at Los Angeles authorized appellant to either issue a new policy or adopt the policy which had previously been issued. Whichever alternative appellant adopted the result would be the same; the contract of insurance would be complete upon appellant's acceptance of the application and the issuance of a new policy or the adoption of the policy which had theretofore been issued by the old Nebraska association. The contracts of insurance were complete upon their acceptance by appellant at Los Angeles.

Assuming, however, that the contracts were made in their entirety in Nebraska, it cannot be said that the continuance of the obligations of the policies constitutes the transaction of business in Nebraska for which that state could exact a privilege tax. Appellant had sought to withdraw itself from that state and the effect of the transaction between it and the Nebraska association was nothing more than a reorganization whereby the old association was transferred from a Nebraska corporation to a California corporation. The continuance of the contracts of insurance, whether written in Nebraska or California, was not dependent on the consent of the state of Nebraska. It is the actual transaction of business that furnishes the ground of license exaction, and not the mere existence of the obligation under the policies previously written. These policies are contracts already made; the state of Nebraska "cannot destroy them or make their mere continuance, independent of acts within its limits, a privilege to be granted or withheld. Neither the continuance of the obligation in itself, nor acts done elsewhere on account of it,

can be regarded as being within the state's control.'' (*Provident Sav. L. Assur. Society* v. *Kentucky, supra.*)

The business conducted by appellant after it took over the the business of the Nebraska association and withdrew from the state of Nebraska was business done in the state of California and subject to the tax provided for in section 3664b of the Political Code.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 23, 1936.