302 N.Y. 226 (1951)
In the Matter of Guardian Life Insurance Company of America, Appellant,
v.
Alger B. Chapman et al., Constituting The Tax Commission of the State of New York, Respondents.
Court of Appeals of the State of New York.
Argued November 29, 1950.
Decided March 8, 1951
Ferdinand Tannenbaum, James F. Donnelly, Merwin Lewis and Victor E. Whitlock for appellant.
Harry D. Rudick, George S. Allan and R. Palmer Baker, Jr., for North American Reassurance Company and another, amici curiæ, in support of appellant's position.
Nathaniel L. Goldstein, Attorney-General (John C. Crary, Jr., and Wendell P. Brown of counsel), for respondents.
LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.
*231 CONWAY, J.
In this proceeding, petitioner-appellant is here as of right, upon constitutional grounds (300 N.Y. 736), to challenge the determination of the State Tax Commission, which, under section 187 of the Tax Law, assessed certain additional franchise taxes upon it for the year 1939. The question presented is initially one of statutory construction, viz., whether, in view of the wording and purpose of section 187 of the Tax Law, certain direct and reinsurance premiums realized by petitioner should have been included in measuring the amount of its franchise tax. The constitutional arguments are advanced by petitioner in connection with the taxability of the direct premiums.
We note at the outset that the administration of insurance company taxation in this State is divided between two of the executive branches of our Government, the Department of Taxation and Finance, pursuant to the provisions of the Tax Law, and the Insurance Department, pursuant to the provisions of the Insurance Law. We need not concern ourselves with the reason for this division.[*] We mention it only to show that both statutes deal with the same general subject matter and are obviously in pari materia. It is necessary here to compare the language of the Tax Law provisions with the present Insurance Law provisions. The latter, because of the circumstances surrounding their enactment, are valuable aids in illuminating the meaning of the former. Since the two laws are in pari materia, they must be read together and applied harmoniously and consistently. (Smith v. People, 47 N.Y. 330, 339, and cases cited.)
*232 Prior to 1937, both under the Tax Law and the Insurance Law, the New York franchise tax had been computed by taking a percentage of "the gross amount of premiums charged * * * for business done at any time in this state". In 1937, the Legislature adopted as a new basic tax measure, premiums "on risks resident in this state". At that time, by the same chapter 530 of the Laws of 1937, both section 187 of the Tax Law and section 34 of the old Insurance Law were rewritten and both became substantially identical. Two years later, in 1939 (L. 1939, ch. 882), the entire Insurance Law was revised and recodified as a result of the work of a Joint Legislative Committee. Section 34 of the old Insurance Law was then broken up and its provisions  altered in form but not in substance  were placed in sections 550 and 552 of the new Insurance Law. It is apparent that the committee did not intend to change the meaning or scope of old section 34 (which, as noted, was identical with section 187 of the Tax Law), but merely attempted to clarify and restate its provisions.
The principal effect of the 1937 revision of both section 187 of the Tax Law and section 34 of the old Insurance Law was to substitute the new "resident risks" standard in place of the former "business done" standard for measuring the amount of premiums upon which the franchise tax was in turn to be computed. After the 1937 amendment, the basic taxing provision in subdivision 2 of section 187 of the Tax Law, applicable to domestic life companies such as petitioner, read in pertinent part as follows: "* * * every domestic life insurance corporation * * * shall, for the privilege of exercising corporate franchises * * * pay a tax of one and three-fourths per centum on all gross direct premiums, less return premiums thereon, received in cash or otherwise on risks resident in this state * * *."
It was apparent, however, that adoption of the "resident risks" standard, as just quoted, without further provision, would eliminate from the total of premiums upon which the franchise tax was payable, a large amount of premium income received here by insurance companies organized in or authorized by New York, arising from policies on the lives of persons resident in other States and not taxed or taxable by such other States. Accordingly, at the time of the 1937 revision, the *233 Legislature attempted to meet that problem in subdivision 5 of section 187: "5. In ascertaining the amount of direct premiums upon which a tax is payable under this section there shall be first determined the amount of total gross premiums or deposit premiums or assessments, less returns thereon, on all policies, certificates, renewals, policies subsequently cancelled, insurance and reinsurance executed, issued or delivered on property or risks located or resident in this state, including premiums for reinsurance assumed, and also including premiums written, procured or received in this state on business which cannot specifically be allocated or apportioned and reported as taxable premiums on business of any other state or states. * * *" (Emphasis supplied.)
The clause last italicized above, viz., "including premiums written, procured or received in this state on business which cannot specifically be allocated or apportioned and reported as taxable premiums on business of any other state or states", has been referred to as the catch-all or inclusion clause. It is the clause upon which the dispute as to the direct premiums here involved has centered. It is clear, and no one questions, that the Legislature intended thereby to cover direct premiums received in New York under policies insuring the lives of individuals residing in States in which the New York company is not currently authorized to do business and therefore is not there subject to tax. The controversy here is not over that broad purpose of the inclusion clause, but rather over whether the particular direct premiums here involved, because of the method of their collection, were "written, procured or received in this state" within the meaning of the statute.
That leads us to a statement of the agreed facts of the case, applicable for the tax year of 1939: Petitioner, whose home office is in New York City, is authorized to do business in all but fifteen of the States of the United States. Nevertheless, petitioner has in force policies covering the lives of persons resident in each of those fifteen States although not there authorized to do business. Policyholders in those States may pay their premiums, following the initial payment, either at the home office in New York, or at a local agency of the petitioner in a State where it is authorized to do business, adjoining or near the State of residence of the policyholder. Premiums, paid by policyholders *234 resident in States where petitioner is not admitted, to agencies in near-by States where petitioner is admitted, are deposited in a bank account, in the name of the petitioner, located in the city where the collecting agency is located. Funds in those accounts are subject to withdrawal only by petitioner. From time to time, petitioner obtains possession of the funds in those accounts by drawing checks thereon, thereby withdrawing the funds to the State of New York. In each city where an agency of petitioner is located, there is also maintained another bank account in the name of the agency manager, subject to withdrawal only by the agency manager or cashier, for the payment of local expenses and commissions, but no premium moneys are deposited in such accounts.
In each of the States in which petitioner is admitted to do business it pays a franchise tax based upon the premiums paid to it on policies on the lives of persons resident in those States, except in one State, where the tax is upon the net reserves on policies on lives of residents there. In the fifteen States where petitioner is not admitted to do business, it is not taxed in any way upon the premiums paid to it on policies on the lives of persons resident in such States. Moreover, petitioner is not taxed by the States in which it is admitted to do business upon the premiums collected by its local agencies therein from policyholders resident in the States where it is not admitted to do business.
Petitioner made and filed with the State Tax Commission its written reports of gross premiums covering each quarter of 1939. The amount of gross premiums so filed "consisted entirely of direct and reinsurance premiums received by petitioner [applicant] with respect to risks resident in the State of New York, and included no direct or reinsurance premiums with respect to any risks resident elsewhere." Petitioner thus did not report as taxable the direct premiums, paid by policyholders residing in States where it was not admitted, collected by its agencies in adjoining States where it was admitted, and withdrawn by it to New York in accordance with the method specified above.
Petitioner's principal contention with respect to the direct premiums above described is that they were "received" by it when they were collected by its agencies in other authorized *235 States, and hence that the determination of the State Tax Commission that such premiums were "written, procured or received in this state" was unauthorized by, and in conflict with, the meaning and intent of the inclusion clause in subdivision 5 of section 187 of the Tax Law. Petitioner argues, in other words, that there can be only one receipt of the premiums by it and that when the premiums were once "received" by its agency in another State and deposited in petitioner's bank account, the premiums were, then and there, "received" by petitioner so that they lost their character as premiums and could not again be "received in this state" when petitioner withdrew the funds into this State.
The contention, in our judgment, is predicated upon too narrow a construction of the word "received". Moreover, it obviously eliminates from the statute the other operative words, "written" and "procured", which appear disjunctively with the word "received" in the inclusion clause. We find it unnecessary, however, to determine the scope and meaning of the words "written" and "procured", for, on the facts of the instant case, we think it clear that the premiums here involved were "received in this state" within the meaning and purpose of the inclusion clause.
The language of the statute must be read in the light of what it was intended to accomplish. Quite evidently, the State of New York, in the inclusion clause, was attempting to include as a measure of the franchise tax, all premiums not taxable elsewhere and primarily attributable to the privilege granted to insurance companies to exist and do business here. As noted, the basic "resident risks" standard used in subdivision 2, without further provision, would exclude a large amount of premium income actually realized by New York companies from policyholders resident in States where the company was not authorized to do business. It has long been settled that the mere payment of premiums to a foreign insurance company does not constitute the doing of business by the company in the State of the policyholder's residence so as to justify a tax by it. (See, e.g., Provident Sav. Life Assur. Soc. v. Kentucky, 239 U. S. 103; Allgeyer v. Louisiana, 165 U. S. 578.) Hence, none of the fifteen States from which petitioner admittedly realizes premium income, although not authorized to do business therein, *236 could tax such premiums. It is not as clear whether the adjoining States, in which petitioner is authorized and maintains agencies where the premiums from residents in nonadmitted States are collected, would have the power to tax such premiums. That is a question, however, which is not before us, for it is here undisputed that no State has attempted to tax the premiums here in issue, and, by the very terms of the inclusion clause, if the premiums were properly "allocated or apportioned and reported as taxable premiums on business of any other state or states", they would not be used as a measure of the New York franchise tax.
We thus have a situation in which petitioner is acquiring the benefit of a large amount of premium income which is either not taxed or not taxable elsewhere. Petitioner's ability to earn such premiums stems directly from the privilege granted by the State of New York to it to exist and to carry on an insurance business in a corporate capacity. The Legislature has determined that such income, reasonably attributable to the New York franchise, should be included in measuring the amount of the New York franchise tax. In so doing, the Legislature, in the inclusion clause, has departed to some degree from the basic "resident risks" standard, and has continued the "business done" measure of computing premium income for the New York franchise tax. Thus, even though these risks are not resident in New York, they are treated for franchise tax purposes as though they were resident here, since the business is peculiarly attributable to the New York franchise and is either not taxed or not taxable elsewhere. This is made clearer in the corresponding provision of the recodified Insurance Law, enacted in 1939, where the catch-all or inclusion clause  amended in form but not in substance  appears as a separate subdivision 2 of section 550 and reads as follows: "2. In determining the amount of direct premiums taxable in this State, all such premiums written, procured, or received in this state shall be deemed written on property or risks located or resident in this state except such premiums as are properly allocated or apportioned and reported as taxable premiums of any other state or states." (Emphasis supplied.)
When that is understood, it becomes clear that the word "received" in the inclusion clause of subdivision 5 of section *237 187 of the Tax Law can have no such narrow meaning as that asserted by petitioner. Dictionary definitions of the word, purporting to show that there can be only one receipt of money at a single fixed time and place, avail us little. We must recognize the practicalities of the situation. The premiums, it is true, are initially and constructively "received" by petitioner when they are collected by its agents in other States. At that time, the premiums are deposited in petitioner's local bank account, subject to withdrawal only by petitioner. "From time to time", as the agreed statement of facts reads, petitioner "obtains possession of the funds in said accounts by drawing checks thereon, thereby withdrawing the said funds to the State of New York." Thus, the petitioner reduces to actual possession and "receives" in this State, the premium proceeds which had previously been constructively received on its behalf by its out-of-State agencies. The whole process by which petitioner ultimately obtains the benefit of these premiums must be viewed in its entirety, and when so viewed, it is clear that the disputed direct premiums are "received in this state" both within the language and intent of the statute.
The principal authority cited by petitioner on this point is Maryland Cas. Co. v. United States (251 U. S. 342, 345-348) which held, on the particular facts there involved, that premiums paid to the agents of the casualty company constituted income, for Federal income tax purposes, received within the tax year when so paid, even though not transmitted to the treasurer of the company until a later tax year. The question arose because, as the Supreme Court said, "The amount, if deducted one year, might appear in the return of the claimant for the next year, but the rate might be different." (P. 346.) There are important factual variations between that case and the case at bar. For instance, it appears that the agents in that case took physical possession of the premium money, and at stated intervals "remitted" by cash or equivalent, the balance due the company. Here, of course, the premiums were deposited in the company's own bank account and could be withdrawn at any time by its own check. But aside from that, we do not think the Maryland Casualty Co. case supports petitioner's contention here. The issue was not whether the premium *238 income should be reported at all, but rather whether it should be reported in one tax year or a later year, and, as the Supreme Court pointed out, "only imperative language in the statute would justify a construction which would place it in the power of the claimant, by private contract with its agents, to shift payment of taxes from one taxing year into another." (P. 347.) So, in the instant case, policyholders in unauthorized States may, at their option, mail their premiums to petitioner's home office in New York or to the agencies in adjoining authorized States. We do not believe that it was intended that the incidence of the tax upon such premiums should depend upon the purely fortuitous circumstance of whether a policyholder should choose to mail his premium directly to New York, or to the nearby agency, when in either event, petitioner in New York is immediately in sole and exclusive control of the premium funds.
Nor do we find merit in the several constitutional arguments made by petitioner in connection with the taxability of the disputed direct premiums. On this appeal, the principal contention is that the statute, as applied, violates the commerce clause of the Federal Constitution. Before considering that contention, we pause to note two minor constitutional objections. Petitioner asserts that the statute, as we construe it, would be unconstitutional under the due process clause of the Fourteenth Amendment to the Federal Constitution if applied, in certain circumstances, to a foreign insurance company authorized to do business in New York. Petitioner supposes an extreme administrative application of the statute which may never come to pass. Aside from that, however, the simple and conclusive answer to the contention is that petitioner is not a foreign, but a domestic, insurance company, and hence has no standing to raise a constitutional objection not applicable to it, even if the argument might be valid if raised by another. (People v. Kunz, 300 N.Y. 273, 277, revd. on other grounds, sub nom. Kunz v. New York, 340 U. S. 290; O'Kane v. State of New York, 283 N.Y. 439, 449.) Likewise, there is no substance to petitioner's claim that the portion of the franchise tax measured by the disputed direct premiums is an ad valorem tax forbidden by section 3 of article XVI of our State Constitution. The tax is not, in any sense, a tax upon property, but is a franchise tax *239 measured by premium income. Obviously, no attempt is made to tax, ad valorem, any of petitioner's intangible property in this State.
Finally, petitioner urges that by construing the inclusion clause to include premiums collected by its out-of-State agencies, deposited in its out-of-State bank accounts and eventually withdrawn by it to this State, the Tax Commission and the court below have, in effect, held that the State of New York may tax petitioner's "importation of its own money into New York". Petitioner in effect likens the tax to one upon goods or commodities in interstate commerce and says that the "effect would be the erection by New York of toll booths along its borders to exact a tax for the privilege of bringing premium proceeds into the State." This, says petitioner, is an unconstitutional regulation of commerce between the States, infringing upon Congress' authority, and forbidden by the commerce clause.
It is plain that petitioner misconceives the nature of the tax here involved. It is not a tax upon income as such, but rather a fee paid by a domestic insurance company for the privilege of exercising a corporate franchise measured by its premiums reasonably attributable to business of this State, either because the premiums arise from policies on resident New York risks (Tax Law, § 187, subd. 2), or may be deemed to be from policies on New York risks because they are received in New York and cannot be allocated or apportioned and reported as taxable on business of any other State. (Tax Law, § 187, subd. 5, inclusion clause.) New York has not attempted to impose a tax "upon" the money itself, much less upon any "importation" thereof. The tax is upon the domestic insurance company and is measured by the premiums traceable to the privilege of its existence conferred by the State of New York. It will be noted that the franchise tax is exactly the same, both as to domestic and foreign insurers, and that it does not discriminate or place anyone at a competitive disadvantage. No possible question of multiple taxation, which might be conceived as a potential burden upon interstate commerce, can arise because the inclusion clause by its own terms applies only where the premiums are not otherwise taxed anywhere. In short, there has been here demonstrated no unconstitutional burden upon, or regulation of, interstate commerce. *240 (See McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33, 45, STONE, J.)
Entirely apart from that, however, we are unable to agree that the commerce clause has any application to our problem. For many years, it was assumed that the business of insurance, despite the fact that it was frequently national in scope, was not interstate commerce within the meaning of this constitutional provision. This belief stemmed from the decisions of the Supreme Court in Paul v. Virginia (8 Wall. [U. S.] 168) and subsequent cases, holding that the negative implications from the commerce clause did not place any limitation upon the power of States over the business of insurance. (See Prudential Ins. Co. v. Benjamin, 328 U. S. 408, 414, 434.) Then, in United States v. South-Eastern Underwriters Assn. (322 U. S. 533), the Supreme Court sustained an indictment against the insurance association under the Sherman Act, thereby holding that Congress under the commerce clause had the power to regulate the business of insurance, i. e., that insurance was commerce and, when it crossed State lines, interstate commerce. It was then feared by many that the elaborate and detailed laws existing in every State for the regulation and taxation of insurance companies were jeopardized. Accordingly, Congress, after investigating the matter, passed the McCarran Act, which declared it to be the policy of Congress "that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." (U. S. Code, tit. 15, § 1011; see, also, § 1012.) These provisions were upheld and fully enforced by the Supreme Court in Prudential Ins. Co. v. Benjamin (supra, pp. 429-431). The result of this judicial and Congressional activity, in our judgment, is that, while the business of insurance may now be "interstate commerce", nevertheless, the States, by express Congressional consent, may continue to tax and regulate it, free from any negative prohibitions implicit in the commerce clause, but subject, however, to other constitutional provisions which may be applicable, such as due process. Here, there is no claim that the franchise tax as applied to petitioner, a domestic insurance company, is unconstitutional for lack of jurisdiction or violation *241 of any provisions of the Federal Constitution other than the commerce clause and, by clear and unambiguous Congressional consent, approved by the Supreme Court, the application of the commerce clause has been removed from State systems of taxation and regulation of the business of insurance.
We turn now to the second main category of disputed premiums, which may be described as follows: Reinsurance premiums, paid to petitioner in New York, under contracts of reinsurance executed in New York, by direct writing companies not authorized to do business in New York, where the original policies are on the lives of persons not resident here.
It will be recalled that the main taxing provision in section 187 for life insurance companies, viz., subdivision 2, does not mention reinsurance premiums. They are mentioned only in subdivision 5 of section 187 of the Tax Law, quoted in full above, which requires the franchise tax to be computed upon "premiums * * * on all policies * * * insurance and reinsurance executed, issued or delivered on property or risks located or resident in this state, including premiums for reinsurance assumed * * *." (Emphasis supplied.)
An identical provision appeared in section 34 of the old Insurance Law following the revision of 1937 which changed the basic tax measure, in both the Insurance Law and the Tax Law, from the "business done" standard to the "resident risks" standard. Concurrently, both sections were also amended so that the administrative method of handling the taxation of reinsurance premiums was changed from the so-called "net retained basis" to the "direct basis". Under the "net retained" formula, a direct writing company admitted to do business in this State, reported and was taxed upon only that portion of the premium which it retained, and the reinsuring company, admitted to do business in this State, reported and was taxed upon the portion which it received here from the direct writing company. Under the new "direct" basis, adopted in 1937, an admitted direct writing company reports and is taxed upon the whole premium received by it from the policyholder, and the admitted reinsuring company, while required to report the receipt of the reinsurance premium, is permitted to deduct it from the total of its gross premiums subject to tax. (Tax Law, § 187, subd. 5, par. [a].) There is no provision for such *242 deduction where an authorized New York company receives reinsurance premiums from a direct writing company not authorized to do business in this State, for in that case, New York has not had an opportunity to tax the direct premium. A number of different factual situations may arise depending upon whether such reinsurance premiums are paid here or in another State under a contract of reinsurance executed here or in another State (see, e.g., Connecticut Gen. Life Ins. Co. v. Johnson, 303 U. S. 77), and depending also upon whether the original policy issued by the nonadmitted direct writing company is upon the life of a person resident here or in another State. Here, however, we are concerned solely with the state of facts presented and our discussion is limited thereto. The question before us is whether, under section 187 of the Tax Law, a domestic insurance company is required to report and is taxed upon reinsurance premiums received here by it from a direct writing company not authorized to do business in this State where the person originally insured by such direct writing company is not a resident of this State.
Reinsurance premiums of that type have been included by the State Tax Commission in determining the amount upon which petitioner's franchise tax is computed. Petitioner contends that it was not intended that these reinsurance premiums be included in measuring its franchise tax under subdivision 5 of section 187 of the Tax Law.
The Tax Commission, on the other hand, points to the following language of subdivision 5 as authority for the imposition of the tax: "* * * there shall be first determined the amount of total gross premiums * * * on all policies * * * insurance and reinsurance executed, issued or delivered on property or risks located or resident in this state, including premiums for reinsurance assumed * * *." The words. "including premiums for reinsurance assumed", read in context, are clearly limited to premiums on policies on "property or risks located or resident in this state". In the last-quoted phrase, the word "property" is to be read with the word "located" and the word "risks" is to be read with the word "resident". Thus, in order to be taxable under the statute, the reinsurance premiums must either be "on property * * * located * * * in this state" or on "risks *243 * * * resident in this state". With respect to life companies, it is clear that the words "property * * * located * * * in this state" have no application. We are thus led to the question whether the reinsurance premiums here involved can be said to be on "risks * * * resident in this state" when the person whose life is insured by the direct writing company is a resident of another State.
It is urged by respondents here that these reinsurance premiums are taxable because the intangible liability of the reinsuring company to the nonadmitted direct writing company is the "risk * * * resident in this state". In other words, that the risk under the reinsurance contract is not the life of the person insured by the direct writer of the policy but is the liability of the reinsuring company to the direct writer and that such "risk" is "located" where the contract of reinsurance is made and to be performed. To accomplish this, the sentence must be rewritten so that the word "risk" is modified by the word "located" rather than by the word "resident", whereas the context of the statute makes it plain that the Legislature was referring separately to (a) "risks * * * resident in this state" and to (b) "property * * * located * * * in this state". (Emphasis supplied.) In addition, the contention fails to recognize that the word "resident" normally connotes the idea of the dwelling place or abode of a living person. Inanimate things, whether tangible or intangible, do not ordinarily "reside", but people do. It seems clear to us that the phrase "risks * * * resident in this state", as used in the statute, refers to the residence of the person whose life is insured and not to the location of the intangible liability of the reinsuring company to the nonadmitted direct writing company. This court has so used the word "risks". See, e. g., People ex rel. Continental Ins. Co. v. Miller (177 N.Y. 515, 521) where we said: "Reinsurance is a contract by which one insurer insures the risks of another insurer." The word has a commonly accepted meaning in the insurance business, viz., a "risk" is the physical property or the person insured. In dealing with insurance taxation matters, it is natural to assume that the Legislature used words in the sense commonly understood in the insurance world.
*244 The matter has been put beyond all doubt by the action of the Legislature itself when it recodified in 1939, section 34 of the old Insurance Law, which as we have already noted is in pari materia with section 187 of the Tax Law and must be read together with it. (Smith v. People, 47 N.Y. 330, supra.) The recodifiers changed the reinsurance provision in the Insurance Law, which is applicable to alien life companies among others, and which formerly had been identical with the Tax Law provision, to read as follows (Insurance Law, § 552, subd. 4): "* * * there shall be first determined the amount of total gross premiums * * * on all policies * * * on property or risks located or resident in this state, including premiums for reinsurance assumed, to the extent that the same covers property or risks located or resident in this state." (Emphasis supplied.) The new italicized language above, repeating as it does in the same clause of the statute the words "property or risks located or resident in this state", was an obvious effort on the part of the recodifiers of the Insurance Law to make it clear that it was never intended by the Legislature to impose a tax upon reinsurance premiums where the original direct policy was on property or risks located or resident outside of the State of New York.
Since that was always so intended by the Legislature as to alien life reinsurance companies, which are covered under section 552 of the Insurance Law, then it was also always so as to domestic life reinsurance companies, for if any discrimination were intended by the Legislature it would not be likely to be in favor of alien companies and against domestic companies. In a similar situation, the Supreme Court has said: "On the contrary, the natural conclusion is that if any discrimination had been intended it would have been made in favor of, and not against, the domestic corporation, which contributes in a much more substantial degree to the support of the people and government of the United States." (Helvering v. Stockholms Enskilda Bank, 293 U. S. 84, 90.)
It is also suggested that the disputed reinsurance premiums might be included as a measure of the franchise tax under the above-noted catch-all or inclusion clause, since, it is argued, that clause "is not limited in terms to direct premiums but covers all premiums, including those received for reinsurance." *245 We do not think this to be a permissible construction of the inclusion clause. Subdivision 5 of section 187  in which the inclusion clause appears  begins "In ascertaining the amount of direct premiums * * *." (Emphasis supplied.) It seems evident that the language used therein, unless expressly stated otherwise, is to apply only to such direct premiums. If the inclusion clause had been intended to apply to reinsurance premiums, we think the Legislature would have so stated in explicit terms as it had already done at one other point in the same subdivision.
Here again, reference to the corresponding Insurance Law provision is helpful. Old section 34 when enacted with section 187 of the Tax Law contained the identical inclusion clause at exactly the same place. The recodifiers, however, removed it from that position, thereby separating it completely from the provision relating to reinsurance premiums, and made it a separate subdivision 2 of section 550 of the present Insurance Law. They also added new introductory words as follows: "In determining the amount of direct premiums taxable in this state, all such premiums * * *." (Emphasis supplied.) Thus, as there used, the inclusion clause can only refer to direct premiums and not to reinsurance premiums. As stated earlier, this amendment of the Insurance Law is a legislative clarification of the language previously used in old section 34 and, since that same language was also used and still appears in section 187 of the Tax Law, the latter provision must be deemed to have the same meaning as the corresponding Insurance Law provision, as legislatively clarified.
In short, we conclude that, while the State Tax Commission correctly and constitutionally determined that the direct premiums here involved should be included to compute petitioner's franchise tax under section 187 of the Tax Law, the further determination that the reinsurance premiums here involved should also be included was erroneous and not authorized by the language of the section.
The order of the Appellate Division should be modified by reversing so much thereof as confirms the determination of the respondents that the reinsurance premiums here involved were taxable and the determination, to that extent, should be *246 annulled; in all other respects, the order should be affirmed, with costs to petitioner-appellant in this court and in the Appellate Division.
Ordered accordingly.
NOTES
[*] For example, most admitted "alien" insurance companies, viz., companies organized under the laws of any government outside of the United States, are taxed under the Insurance Law (present § 552, subds. 1, 2; old § 34, subds. 1, 2, 4), but certain admitted alien fire and marine companies are also taxed under the Tax Law (§ 187, subd. 4). Similarly, certain admitted "foreign" companies, viz., companies organized under the laws of any other State of the United States, are taxed upon nonlife business under the Insurance Law (present § 552, subd. 3; old § 34, subd. 4), while admitted foreign life companies, as well as all domestic insurance companies, are taxed under the Tax Law (§ 187, subds. 1, 2). Foreign casualty and surety companies pay a 2% tax which is customary for nonlife companies, but 1% is paid under the Insurance Law (present § 552, subd. 1, par. b; old § 34, subd. 3) and the other 1% is paid under the Tax Law (§ 187, subd. 3).