[Civ. No. 16656.   First Dist., Div. Two.   Feb. 27, 1956.]

OCCIDENTAL LIFE INSURANCE COMPANY (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION et al., Appellants.

Edmund G. Brown, Attorney General, and Harold B. Haas, Deputy Attorney General, for Appellants.

Knight, Boland & Riordan and John H. Riordan for Respondent.

DOOLING, J.—In an action to recover taxes paid under protest in the amount of $13,739.45 the trial court gave judgment for the plaintiff from which the defendants appeal. The plaintiff, hereafter called Occidental, is a life insurance company incorporated under the laws of California with its principal place of business in the city of Los Angeles. The taxes involved in this case were based upon premiums received by Occidental during the year 1950 from policyholders residing in states in which Occidental was not licensed to do business.

The facts are not disputed. The premiums in question were all renewal premiums paid by the holders of policies issued by Occidental in previous years. All of the records of such policies are kept by Occidental in its Los Angeles office and all bookkeeping entries in connection with such policies are made there. From these records notices to these policyholders, showing the amount of renewal premium and its due date, with the name and address of the policyholder typed thereon, were made up in the Los Angeles office. They were then sent in bulk to the Nevada office of Occidental. In the Nevada office each notice of premium due was placed in a "window" envelope so that the name and address of the policyholder already typed on the notice showed through the transparent "window" and thereby served as the name and address of

the addressee. Also typed on the premium notice as the address to which the premiums should be mailed was the Nevada address of Occidental and a self-addressed envelope directed to that office was enclosed with each premium notice. When the remittances from these policyholders were received by mail in the Nevada office they were deposited in a special bank account in Nevada, withdrawals from which could only be made by authorized officials in Occidental's home office in Los Angeles. A special form of deposit slip was used, having a column for the notation of the number of the policy on which the premium was paid opposite the amount of the deposit. A duplicate of the deposit slip was then mailed to the Los Angeles office and a bookkeeping entry of the fact and date of payment of the premium was entered from this deposit slip in the permanent records of the policyholder maintained in that office. These duplicate deposit slips are also filed in the Los Angeles office. It is also in evidence that all claims with respect to such policies are paid out of Occidental's main bank account at Los Angeles. The policies, representative specimens of which were introduced, contain provisions for change of beneficiary, assignment of policy, proof of death, loans upon the value of the policy and for special settlement agreements, some of which by express provision of the policy only become effective upon filing the appropriate document in the home office and the rest of which contemplate action by the officers of the company which we are entitled to assume would be performed at the home office.

Occidental is licensed to do business in the State of Nevada and has paid the taxes exacted by that state, but such taxes do not include any tax based upon these premiums.

■■■ Our Constitution, article XIII, section 14⅘, imposes a tax on life insurance companies doing business in this state, and in this respect provides: "the 'basis of the annual tax' is . . . the amount of gross premiums, less return premiums, received in such year by such insurer upon its business done in this State . . ." (Cal. Const., art. XIII, § 14⅘, subd. (d).)

It is Occidental's position that these renewal premiums received by it in the State of Nevada are not "premiums . . . received . . . upon its business done in this State" within the meaning of this constitutional provision and hence the taxes based thereon are unauthorized. In this respect Occidental argues that the only business done in connection with these outstanding policies is their renewal for the premium term which,

under the terms of the policies themselves, becomes effective upon the receipt of the premiums by it at its office in the State of Nevada, and that this business is done in the State of Nevada and is not and cannot be "business done in the State of California."

This argument has a deceptive simplicity. However the grammatical construction of the constitutional provision in question, in and of itself, demonstrates that the "business done" upon which the "premiums" are "received" is not the receipt of the premiums. The premiums may be received inside or outside of the State of California and they are still made "the basis of the annual tax" if the "business" upon which they are based was "business done in the State of California." To equate the receipt of the premiums with the "business done" upon which they are received would result in paraphrasing the constitutional provision to read: "premiums . . . received upon its business (of receiving premiums) done in this State." Such a construction is both tautological and unreasonable.

That the receipt of renewal premiums on life insurance, and the consequent extension of the full benefits of the policy for the new premium term, is not the business done upon which these premiums are received is demonstrated by the leading Pennsylvania case of *Commonwealth* v. *Equitable Life Assur. Soc.*, 239 Pa. 288 [86 A. 787]. In that case the insurance company was licensed to do business in Pennsylvania. The company received renewal premiums from policyholders residing in Pennsylvania at its office outside that state. The Pennsylvania statute imposed a tax measured by "premiums . . . received from business done within this commonwealth." The company claimed that since the premiums were received outside the State of Pennsylvania, they were not "from business done within" the state. The Supreme Court of that state ruled otherwise. It said at page 788: "The court below seems to have unduly narrowed its inquiry, and contented itself with asking whether the mere receipt of premiums at an outside office was doing business within this commonwealth. Certainly not, if that was all there was to it. But the answer to that question is not at all decisive of the real inquiry here. The defendant society does not exist merely for the collection of premiums; that is a mere incident to the great and beneficent purpose for which it exists. When it comes within our borders to do business, it renders a service; it furnishes pro-

tection and indemnity to its beneficiaries, residents of the state of Pennsylvania. That is the business which it does in Pennsylvania, and that is the purpose for which it seeks and is granted permission to enter. Furnishing that service, that insurance against loss, it makes a proper charge to cover the cost of the service which it renders, and that charge is the premium. It is simply payment for the valuable service it renders. Whether that service be paid for on the spot where the service is rendered, or whether the amount be remitted to the home office, does not change the character of the business done, and for which recompense or payment is made . . . If the society was merely engaged in collecting premiums, without regard to the business or service for which those premiums were paid, there would be force in the suggestion that premiums collected outside the state do not constitute doing business within the state. But, when we reflect that the tax is placed upon the amount of the premium merely as a measure of the volume of insurance business done within the state, it is apparent that determining the place where the premium is received is not the proper test to apply in order to ascertain what that business was, or in what it consisted.''

The constitutionality of the tax so imposed was affirmed by the Supreme Court of the United States in *Equitable Life Assur. Soc.* v. *Pennsylvania,* 238 U. S. 143 [35 S.Ct. 829, 59 L.Ed. 1239]. For a similar holding see also *Pittsburgh Life & Trust Co.* v. *Young,* 172 N. C. 470 [90 S.E. 568].

These cases make clear that the ''business done'' ''from'' or ''upon'' which the premium is received is something other than the receipt of the premium and as a consequence that the receipt of the premium outside of the state is not determinative that the ''business'' upon which the premium was received was ''business done'' outside of the state.

The Pennsylvania court equated the ''business done'' in Pennsylvania with the sum total of the services furnished by the insurance company to its citizens under the policies held by them and so concluded that the business from which the premiums were received was ''business done'' in Pennsylvania. In our case the only acts performed in Nevada by Occidental were the stuffing and mailing of envelopes containing premium notices, and the receipt and deposit of the premiums. All other services to these policyholders, since they were not done in Nevada must have been done elsewhere. They could not

be performed in the states of the policyholders' residence since Occidental was not licensed to do business in those states. █ While the obligation of the policies of residents of a state in which the insurer is not licensed continues that alone does not constitute the transaction of business (*Western Travelers Acc. Assn.* v. *Johnson,* 14 Cal.App.2d 306, 309 [58 P.2d 206]) and without a license the insurer is forbidden to transact business in the state (*cf. Provident Sav. Life Assur. Soc.* v. *Kentucky,* 239 U. S. 103 [36 S.Ct. 34, 60 L.Ed. 167]). The business. cannot be conducted in a vacuum and in fact the recital of the evidence which we have set out above shows that all of the services to these policyholders rendered by Occidental, other than the collection of the premiums, is rendered to them at its home office in Los Angeles.

█ There is no constitutional objection to a tax on a *domestic* insurance company based on premiums received from policyholders residing in states in which the insurer is not licensed to do business, even though the premiums are received by it in another state. (*Guardian Life Ins. Co. of America* v. *Chapman,* 302 N.Y. 226 [97 N.E.2d 877, 883-884] ; *cf. Commissioner of Corp. & Tax.* v. *Boston Ins. Co.,* 328 Mass. 641 [105 N.E.2d 382].)

Cases are cited by respondent defining the meaning of "doing business" for tax purposes. They are all cases concerned with interstate commerce or with *foreign* corporations. The Pennsylvania court pointed out in *Commonwealth* v. *Equitable Life Assur. Soc., supra,* 86 A. at page 788 that cases construing the meaning of "doing business" in other situations are of little aid in determining the precise question here presented. Occidental is a *domestic* not a *foreign* corporation. It derives its privilege of doing business from its incorporation in this state. The New York court said in *Guardian Life Ins. Co. of America* v. *Chapman, supra,* 97 N.E.2d at page 884: "The tax is upon the domestic insurance company and is measured by the premiums traceable to the privilege of its existence conferred by the State of New York." █ The tax in our case is equally a privilege tax (*Carpenter* v. *Peoples Mut. Life Ins. Co.,* 10 Cal.2d 299, 302 [74 P.2d 508]) and Occidental by virtue of the privilege of its existence conferred by the State of California is conducting all of its activities with relation to the policies held by these policyholders, who reside in states in which it is not licensed, at its Los Angeles office in this state, except the collection of premiums alone. The premiums

though collected in Nevada are traceable to these activities and may fairly be held to be "premiums . . . received . . . upon its business done in this State" within the meaning of the constitutional provision.

Judgment reversed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied March 28, 1956, and respondent's petition for a hearing by the Supreme Court was denied April 25, 1956. Carter, J., did not participate therein.