OPINION OF THE COURT
Marianne Furfure, J.
Defendant Terry L. Champion has been charged in this indictment with one count of unlawful manufacture of methamphetamine in the third degree and one count of driving while ability impaired by drugs. Defendant has moved to dismiss the indictment on the grounds that the evidence before the grand jury was not legally sufficient to support the charges and the indictment was defective. The court reserved decision on defendant’s application.
In reviewing the sufficiency of the evidence before the grand jury, this court must consider “whether the evidence viewed in the light most favorable to the People, if unexplained [or] uncontradicted, would warrant conviction by a petit jury” (People v Jennings, 69 NY2d 103, 114 [1986]; People v Bello, 92 NY2d 523, 525 [1998]; People v Swamp, 84 NY2d 725, 730 [1995]). The court must assess whether the facts, if proved, and the inferences that logically flow from those facts, supply proof of every element of the crimes charged (People v Deegan, 69 NY2d 976, 979 [1987]; People v Bello at 526). While the *1138 court is not to assess the quality or the weight of the evidence, it still must determine if the evidence is legally sufficient to support each element of the crime charged.
The court has thoroughly reviewed the grand jury minutes and relevant case law and finds that defendant’s application must be granted, in part. Count one charges defendant with unlawful manufacture of methamphetamine in the third degree, in violation of Penal Law § 220.73 (1). To sustain this charge, the prosecution must present legally sufficient evidence to establish that defendant possessed, at the same time and location, two or more items of laboratory equipment and two or more precursors, chemical reagents or solvents, in any combination, with the intent to use same to manufacture, prepare, or produce methamphetamine, or knowing that another intends to do so.
The evidence presented to the grand jury establishes that defendant had multiple items of laboratory equipment and more than 180 unpackaged pills, some of which may have contained pseudoephedrine and others which may have contained pseudoephedrine hydrochloride. Defendant argues that, although the police found multiple pills, all of them contained only one precursor, pseudoephedrine, and therefore, he cannot be prosecuted under Penal Law § 220.73 (1).
Section 220.00 (16) (a) of the Penal Law defines the term “precursor” as “ephedrine, pseudoephedrine, or any salt, isomer or salt of an isomer of such substance[ ].” The ambiguity presented by this statutory language is whether a person can be charged with possessing two or more precursors if he possesses only multiple pills containing pseudoephedrine. This court has found no guidance in case law or statutory language and so must construe the legislature’s intention in creating the statute.
The court’s primary consideration when construing the meaning of a statute is to ascertain and give effect to the intention of the legislature (McKinney’s Cons Laws of NY, Book 1, Statutes § 92). This is done from a literal reading of the statute and consideration of the purpose for which the law was passed (Matter of Guardian Life Ins. Co. of Am. v Chapman, 302 NY 226, 235 [1951]). However, the legislature is presumed to mean what it says (Statutes § 94). Therefore, the court may not read into a law any word or provision, unless there is justification for assuming that the legislature intended to include something which they have failed to plainly express (Statutes § 92).
*1139 After a dramatic rise in the number of clandestine and dangerous methamphetamine laboratories in New York, the legislature took action in 2005 to increase law enforcement’s ability to stop these operations without the need to find the finished product (Senate Introducer Mem in Support, Bill Jacket, L 2005, ch 394 at 6). This increase in methamphetamine production in New York State was due, in part, to the migration of methamphetamine producers from other states where stricter laws had been enacted which criminalized possession of the chemicals used to produce methamphetamine (Commission of Investigation of State of New York, Methamphetamine Use and Manufacture, Executive Summary at iv). At the time the legislature was considering this legislation, 34 other states had already criminalized possession of the precursors or essential chemicals needed to make methamphetamine. Out of those 34 states, 22 criminalized possession of both precursors and chemicals, nine states criminalized possession of only the precursors and at least two states required possession of at least two chemicals or precursors (id. at 33). In 2004 Pennsylvania passed legislation criminalizing possession of the precursors ephedrine or pseudoephedrine and certain other chemicals, with the intent to manufacture a controlled substance {id. at 22). The Commission report also found that almost all who manufacture methamphetamine use the precursors ephedrine or pseudoephedrine and chemicals used as solvents or reagents to convert those precursors into methamphetamine {id. at 4-5).
The stated goal of the new legislation was to close existing loopholes in the law which allowed methamphetamine manufacturers to go free when law enforcement agencies discovered a methamphetamine lab, but found no final drug product (Letter from Assemblyman Dinowitz, July 27, 2005 at 3, Bill Jacket, L 2005, ch 394). The legislature closed this loophole, in part, by making it illegal to possess otherwise legal ingredients and equipment when used to make methamphetamine. As a result, manufacturers, or those aiding manufacturers, can be charged with a felony, if they possess the ingredients and equipment to make methamphetamine, even if the methamphetamine manufacturing process has not been completed (L 2005, ch 394, Governor’s Program Mem No. 84, 2005 NY Legis Ann at 238).
By broadly defining the term “precursor” to include not only ephedrine and pseudoephedrine, but also any salt, isomer or salt of an isomer of either substance, the legislature expanded the ability of law enforcement to intercept the manufacturers *1140 of methamphetamine by identifying different components of these otherwise legal drugs as precursors. Had the legislature wanted to limit the definition of the term “precursor” to ephedrine and pseudoephedrine only, they could have omitted any reference to isomers, salts, or salts of isomers. However, by requiring a combination of different components of the manufacturing process be found, at the same time, the legislation provides some way of identifying that the intended use was the manufacture of methamphetamine. If the legislature intended that multiple pills containing one precursor was sufficient, there would be no need to require a combination of ingredients.
This construction of Penal Law § 220.73 (1) is supported by the language of Penal Law § 220.73 (2) which states that a person can be found guilty of manufacturing methamphetamine, if he possesses one item of laboratory equipment and three or more precursors, chemical reagents or solvents in any combination. Possession of three or more precursors is possible only if ephedrine, pseudoephedrine and the isomers and salts of isomers thereof are considered to be separate precursors. By identifying these ingredients and requiring two or more, the language of the statute supports the interpretation that possession of a single ingredient, regardless of the number of pills, is not sufficient, but a combination of different precursors, reagents or solvents is. The use of “or” within the list of three illegal substances, coupled with the language “in any combination,” indicates that possession of two different precursors and two items of laboratory equipment satisfies the elements of the statute.
In this case defendant was charged with possessing two or more items of laboratory equipment and two precursors. One of the witnesses before the grand jury testified that some of the pills which defendant possessed contained pseudoephedrine and some contained pseudoephedrine hydrochloride. However, this witness did not establish how he arrived at that conclusion. He did not testify that he had the training and experience to identify these components, nor did he state what information he relied upon in making this conclusion. “More than con-clusory assertions that the defendant possessed a drug are required at the Grand Jury stage” (People v Swamp, 84 NY2d 725, 730 [1995]).
Another grand jury witness testified that, based on his own specialized training in recognizing pills that contain *1141 precursors, all the pills found in defendant’s vehicle contained pseudoephedrine. This witness did not testify that any of the pills contained a salt or isomer of pseudoephedrine. Therefore, the only competent evidence presented to the grand jury was that the defendant possessed only the one precursor, pseu-doephedrine. As a result, the evidence presented to the grand jury was legally insufficient to charge defendant with a violation of Penal Law § 220.73 (1). Accordingly, defendant’s motion to dismiss count one is granted.
Legally sufficient evidence was presented to the grand jury which, if uncontradicted or unexplained, would support count two of the indictment which charges defendant with driving while ability impaired by drugs. The deputy who evaluated defendant and concluded that defendant was impaired by central nervous system stimulants, testified about his training and experience as a drug recognition expert and the 12-step evaluation he completed on the defendant. His testimony concerning the results of his evaluation, together with testimony that defendant admitted he smoked marijuana earlier in the day and used methamphetamine the day before his arrest, is sufficient to provide a reasonable basis for the grand jury to infer that defendant was driving while his ability was impaired by drugs (People v Swamp, 84 NY2d 725, 733 [1995]; People v Drouin, 115 AD3d 1153, 1154 [4th Dept 2014]; People v Clark, 309 AD2d 1076 [3d Dept 2003]). Finally, the court finds that the proceedings themselves were not otherwise defective.
Based on the above, defendant’s motion to dismiss count one is granted with leave to the People to re-present this count to another grand jury pursuant to CPL 210.20 (4). Defendant’s application to dismiss count two is denied.